UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

SARAH TOWNSEND, individually and on
behalf of all others similarly situated,

                    Plaintiff,                    **DECISION AND ORDER**

          v.                                      6:24-CV-06180 EAW

HAZA FOODS, LLC, HAZA FOODS OF
NORTHEAST, LLC, HAZA FOODS OF
MINNESOTA LLC, AND DOES 1 to 25,

                    Defendants.

─────────────────────────────────────

## <u>INTRODUCTION</u>

Plaintiff Sarah Townsend ("Plaintiff") brings this action individually and on behalf of others similarly situated, asserting claims under Title III of the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq.* ("the ADA"), relating to the accessibility of parking lots at various Wendy's restaurants allegedly owned and/or operated by defendants Haza Foods, LLC, Haza Foods of Northeast, LLC, Haza Foods of Minnesota LLC, and Does 1 to 25 (collectively, "Defendants"). (Dkt. 1). Pending before the Court is Defendants' partial motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 12). For the reasons explained below, the motion is denied.

## <u>BACKGROUND</u>

The following facts are taken from the complaint. (Dkt. 1). As required on a motion to dismiss, the Court treats Plaintiff's well-pleaded factual allegations as true.

Plaintiff is a resident of Oswego, New York, and uses a wheelchair for mobility. (Dkt. 1 at ¶ 8).  Defendants are companies that own, lease, and/or operate Wendy's restaurants.  (*Id*. at ¶¶ 10-12).  Plaintiff believes that Defendants collectively own, lease, and/or operate 400 Wendy's restaurants in the states of Texas, Louisiana, Minnesota, New York, and Ohio.  (*Id*. at ¶ 15).

On September 16, 2023, Plaintiff visited Defendants' restaurant located at 3050 Winton Road, Rochester, New York.  (*Id*. at ¶ 17).  At that time, Plaintiff had trouble exiting and entering her vehicle and navigating Defendants' facility due to excessive slopes in the accessible parking areas, including that Plaintiff needed to exercise extra care to avoid falling and to safely traverse the area.  (*Id*.).

Plaintiff alleges that she plans to return to Defendants' 3050 Winton Road restaurant.  (*Id*. at ¶ 18).  On September 16, 2023, Plaintiff was traveling through the area to visit a friend who lives in Rochester, New York, and she stopped at Defendants' restaurant to pick up "a small snack of fries" because she prefers Defendants' food.  (*Id*.).  Plaintiff travels to the same area multiple times a month to attend pet shelter events, to explore the parks, and to shop in the stores.  (*Id*.).  During those visits, Plaintiff intends to return to Defendants' restaurant.  (*Id*.).  Plaintiff alleges that her ability to access and safely use Defendants' restaurant has been significantly impeded, and she will be deterred from returning to and accessing the restaurant, due to the discrimination she previously encountered there.  (*Id*. at ¶ 19).

Plaintiff believes that, as Wendy's franchisees operating under franchise agreements, Defendants utilize a confidential Operations Standards Manual ("the

Manual"), which is issued by the franchisor when the franchise disclosure document ("the FDD") is signed. (*Id.* at ¶ 21). The FDD to which Defendants are subject is similar, if not identical, to a previous version found publicly. (*Id.*). The Manual is 662 pages, and it contains the franchisee's obligations with respect to standards and specifications for the restaurants. (*Id.*). The Manual is not available publicly, but the FDD provides the Table of Contents. (*Id.*).

Defendants are provided with the Manual and all the accompanying materials, and under the FDD they are required to comply with the Manual. (*Id.* at ¶ 22). Pursuant to the FDD, Defendants are required to maintain the restaurant buildings' interiors and exteriors in compliance with the maintenance policies, practices, and procedures, including those related to "Daily Outside Maintenance." (*Id.* at ¶ 23). Specifically, the FDD states:

> Subtenant's obligation to maintain and repair includes specifically, but is not to be limited to, the maintenance and repair and/or replacement of the following: the foundations, roof, floor and structural portions of the walls of the Restaurant; parking lot; curbs; driveways; sidewalks; gutters; fixtures, facilities and equipment located on the Premises; heating, air-conditioning, electrical and plumbing systems; exterior and interior doors; windows and glass; signs and other equipment installed and used by Subtenant; any easements appurtenant to the Premises in accordance with the terms of such easements; and the keeping, maintaining and updating of a written or electronic log in a format approved by Sublessor documenting such maintenance records, receipts and any warranties related thereto and keeping the same available for periodic inspection by Sublandlord upon request.

(*Id.*). Defendants are further required to "reimage 70% of their existing Restaurants by the end of 2022, 85% by the end of 2023, and 100% of their Restaurants by 2024," and "[u]nder the franchise agreement . . . Quality requires that franchisees refurbish and remodel all of their Restaurants once every ten years, and again before renewal." (*Id.* at ¶ 24).

The FDD provides minimum requirements for any new build, remodel, or refresh of the existing facilities, including that "Franchisees are solely responsible for ensuring that the design and completed construction/alteration of their restaurants comply with the requirements of all applicable federal, state, provincial, or local laws, codes, and regulations, including those of [the ADA] and all state, provincial, or local accessibility laws and requirements." (*Id*. at ¶¶ 25-26). The FDD requires Defendants to designate an "Approved Operator," who supervises the operation of Defendants' restaurants within designated market areas. (*Id*. at ¶ 27). Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning their daily outside maintenance obligations through a Director of Operations, who supervises Area Directors or Regional Managers, who in turn directly supervise District or General Managers, and then individual restaurant managers. (*Id*. at ¶ 28).

Plaintiff alleges that Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the parking areas of Defendants' facilities, in violation of the ADA and its implementing regulations. (*Id*. at ¶ 29). On Plaintiff's behalf, investigators examined multiple locations Plaintiff believes are owned, controlled, and/or operated by Defendants, and found violations, which demonstrate that Defendants' existing policies, practices, or procedures are discriminatory and result in excessive sloping conditions in the parking spaces, accessible routes, and curb ramps. (*Id*. at ¶ 30). Plaintiff identifies 11 restaurants located in Wisconsin, Minnesota, New York, and Ohio, with one or more of the following

violations: the purportedly accessible curb ramp located on the route to the building entrance has a flare exceeding 10 percent; the purportedly accessible landing at the top of the curb ramp to the building has a slope exceeding 2.1 percent; and/or the parking surface of one of more of the purportedly accessible parking spaces and access aisles within the parking area has slopes exceeding 2.1 percent. (*Id*. at ¶¶ (a)-(k)). Plaintiff alleges that "[a]s evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated." (*Id*. at ¶ 31).

Plaintiff seeks to certify a nationwide class: "All wheelchair users with qualified mobility disabilities who encountered accessibility barriers within the Parking Areas of any Haza Foods, LLC; Haza Foods Of Northeast, LLC; Haza Foods Of Minnesota LLC and DOES 1 to 25 location." (*Id*. at ¶ 35). As to numerosity, Plaintiff alleges that the class is so numerous that joinder of all individual members in one action would be impracticable, and the disposition of the individual claims through a class action will benefit the parties and the Court, and will facilitate judicial economy. (*Id*. at ¶ 36). Further, Plaintiff alleges that her claims are typical of the claims of class members, since they are based on the same legal theories and arise from the same unlawful conduct. (*Id*. at ¶ 37). Plaintiff alleges that there are common questions of fact and law, because there is a "well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services," due to

Defendants' failure to make their facilities fully accessible. (*Id*. at ¶ 38). Finally, Plaintiff alleges that she is an adequate representative of the class because her interests do not conflict with the interests of the class members, that she will fairly, adequately, and vigorously represent and protect the interests of the class, and she has no interests antagonistic to the members of the class. (*Id*. at ¶ 39). Plaintiff has retained counsel experienced in the prosecution of class action litigation, including under the ADA. (*Id*.).

Plaintiff requests injunctive relief[1] for herself and on behalf of the class. Specifically, Plaintiff requests an order from the Court that Defendants are in violation of the ADA, and that Defendants be required to remediate excessive sloping in the parking areas of their restaurants and modify their existing maintenance policy to ensure that excessive sloping conditions in the parking areas do not reoccur. (*Id*. at 3, 12-14).

## PROCEDURAL BACKGROUND

Plaintiff filed her complaint on November 15, 2023, in the United States District Court for the Northern District of New York. (Dkt. 1). After obtaining an extension of time (*see* Dkt. 10), Defendants filed a partial motion to dismiss the complaint on January 10, 2024 (Dkt. 12). Plaintiff filed a response on January 31, 2024 (Dkt. 17), and Defendants filed a reply on February 9, 2024 (Dkt. 20).

Thereafter, on March 18, 2024, the Hon. David N. Hurd, United States District Judge, issued an Order to Show Cause, directing that Plaintiff show cause in writing why

---

[1]     Only injunctive relief is available to plaintiffs under Title III of the ADA. 42 U.S.C. § 12188; *see also Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief . . . is not available to private individuals under Title III of the ADA.").

the case should not be transferred to the Western District of New York, pursuant to 28 U.S.C. § 1406(a).  (Dkt. 21).  Plaintiff responded, stating that while venue was proper in the Northern District of New York, she did not oppose transfer to the Western District of New York.  (Dkt. 22).  On March 26, 2024, the case was transferred to the Western District of New York.  (*See* Dkt. 23; Dkt. 24).

## DISCUSSION

### I.    Legal Standards

#### A.    Fed. R. Civ. P. 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B. Fed. R. Civ. P. 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.' '[A] plaintiff must demonstrate standing for each claim and form of relief sought.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (alteration in original) (citations omitted). "Although standing challenges have been brought under Rule 12(b)(6), 'the proper procedural route is under Rule 12(b)(1).'" *Lugones v. Pete and Gerry's Organic*, No. 19 Civ. 2097 (KPF), 2020 WL 871521, at *5 (S.D.N.Y. Feb. 21, 2020) (quoting *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)).

When standing is challenged on the basis of the pleadings, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver*, 621 F.3d at 225 (quoting *W.R. Huff Asset Mgmt. Co. v.*

*Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)).  Thus, when a Rule 12(b)(1) motion is facial (based solely on the pleadings), a plaintiff has no evidentiary burden and the "task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (alterations in original) (citation omitted); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (when a standing challenge is facial, a plaintiff has no evidentiary burden, "for both parties can be said to rely solely on the facts as alleged" in the complaint).

## II.    **Defendants' Motion to Dismiss**

Plaintiff brings her claims under the ADA, which provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  Plaintiff alleges that Defendants have centralized maintenance and operational policies, practices, and procedures, which systematically and routinely result in excessive sloping conditions in the parking areas of Defendants' restaurants, and are therefore in violation of the ADA.  (Dkt. 1).

Defendants advance two arguments in support of their motion to dismiss.  First, Defendants argue that Plaintiff lacks standing to pursue claims against Wendy's restaurants she never visited or does not intend to visit; and second, that a Rule 23 class for nationwide injunctive relief cannot be certified, and therefore the Court should dismiss and/or strike

Plaintiff's class claims. (Dkt. 12-1 at 9-21). Because it implicates jurisdictional concerns, the Court turns first to Defendants' standing arguments.

## A. **Standing**

Defendants raise three arguments in support of their claim that Plaintiff lacks standing: (1) Plaintiff did not suffer any past injury as to Wendy's restaurants she never visited; (2) Plaintiff fails to plead intent to visit Defendants' other restaurants; and (3) Plaintiff's information and belief allegations are insufficient to support a plausible inference of discriminatory treatment at other restaurants. (*Id.* at 2, 10-17). In response, Plaintiff argues that Defendants' standing arguments are premature, and they conflate individual standing with the secondary issue of class certification. (Dkt. 17 at 10-20).

To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"In the ADA context . . . an injury in fact is established where (1) the plaintiff alleges past injury under the ADA; (2) it is reasonable to infer from the complaint that this discriminatory treatment will continue; and (3) it is also reasonable to infer, based on the

past frequency of the plaintiff's visits and the proximity of the public accommodation to his home, that he intends to return to the public accommodation in the future." *Thorne v. Boston Mkt. Corp.*, 469 F. Supp. 3d 130, 135 (S.D.N.Y. 2020) (quotations, citation, and alterations omitted); *see also Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (same). "Whether an ADA plaintiff intends to return to a place of accommodation is a fact-specific inquiry," and the "threat of future injury must be 'real and immediate,' as opposed to 'merely conjectural or hypothetical.'" *Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163, 168 (S.D.N.Y. 2020) (quotations and citations omitted), *aff'd*, 28 F.4th 435 (2d Cir. 2022).

### 1. **Plaintiff's Individual Standing**

Defendants do not dispute that Plaintiff has standing to bring her ADA claims individually as against the 3050 Winton Road restaurant she visited in September 2023. (*See* Dkt. 17 at 9). Plaintiff visited that restaurant, observed and navigated the handicapped parking area, and alleges that she intends to return to that location because of various interests she has in the nearby area. (*See* Dkt. 1 at ¶¶ 17-18). Accordingly, Plaintiff has sufficiently established standing as to the 3050 Winton Road restaurant. *See, e.g.*, *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 343 (D.N.J. 2003) ("[B]ased upon [the plaintiff's] prior visits to Burger King restaurants, and his intent to return to these restaurants, we find that [the plaintiff] has demonstrated a real and immediate threat of future injury, and has thus, satisfied the injury in fact requirement.").

As to other restaurants owned by Defendants, Plaintiff alleges that investigators sent on her behalf examined ten additional Wendy's restaurants owned by Defendants—

including restaurants located in New York, Wisconsin, Minnesota, and Ohio (*see* Dkt. 1 at ¶ 30)—and that these locations have similar sloping violations and are not in compliance with the ADA. Plaintiff has not alleged that she visited any of these restaurants in the past, that she intends to visit any of these restaurants in the future, or even that she intends to travel to the geographic areas around these restaurants in the future. "Standing to bring claims for injunctive relief for an ADA claim is established if a plaintiff can 'show a plausible intention or desire to return to the place of the injury but for the barriers to access,'" *see Access 4 All, Inc. v. Trump Intern. Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 168 (S.D.N.Y. 2006) (citation and alteration omitted), and Plaintiff has not alleged any such intention to return to any restaurant apart from the 3050 Winton Road restaurant. Accordingly, if Plaintiff was bringing ADA claims on an individual basis only, she would not have standing to assert claims against the restaurants she has not visited or does not intend to visit.

But this is not a case where Plaintiff brings claims only for individual injuries she sustained because of Defendants' alleged non-compliance with the ADA. Plaintiff seeks to bring her claims on behalf of a class based on the alleged common policy employed by Defendants and the resulting ADA violations, and therefore Defendants' standing argument "confuses class standing with individual standing." *Hernandez v. AutoZone, Inc.*, 323 F.R.D. 496, 501 (E.D.N.Y. 2018) (rejecting the defendant's argument that the plaintiff, who brought claims on behalf of himself and others after he visited an AutoZone located in Brooklyn, New York, lacked standing because he visited only the Brooklyn location, and explaining that in a putative class action, "[a] named plaintiff does not require

individual standing to bring each class member's claim in order to establish 'class standing'"); *Lowell v. Lyft, Inc.*, No. 17 Civ. 6251 (PMH) (AEK), 2022 WL 19406561, at *6 (S.D.N.Y. Dec. 22, 2022) (rejecting argument that the plaintiff did not suffer an injury-in-fact as to all non-access regions outside of her home because she did not intend to visit those locations, and explaining that "the question is not whether [the plaintiff] intends to travel to other Non-Access Regions around the country," but "whether the access barriers encountered by other class members in other Non-Access Regions implicate the same set of concerns as the access barriers encountered by [the plaintiff] in Westchester County, New York" (internal quotations omitted)), *adopted*, 2023 WL 2622925 (S.D.N.Y. Mar. 24, 2023); *see also Moody v. Circle K. Stores, Inc.*, No. 2:18-cv-435-CLM, 2023 WL 404018, at *2 (N.D. Ala. Jan. 25, 2023) ("The parties seem to agree that Plaintiffs have standing to bring individual ADA claims.  The only dispute is whether Plaintiffs have standing to seek injunctive relief as to stores they have not visited.  In other words, the standing issue arises only because Plaintiffs try to represent a class.").  Accordingly, the Court considers whether Plaintiff's allegations about her experience at Defendants' 3050 Winton Road restaurant implicates the same set of concerns as those allegedly encountered by others at restaurants not visited by Plaintiff.

### 2.  Class Standing

Both Plaintiff and Defendants cite cases in support of their respective positions on whether Plaintiff has plausibly alleged standing on behalf of the class.  For example, Plaintiff cites cases where courts found that a plaintiff plausibly alleged standing to sue on behalf of the class because he or she experienced discrimination at one of the defendant's

locations and that common policies or violations existed among the defendant's locations, concluding that issues about the commonality of the injuries suffered by the named plaintiffs and other individuals in the class were best addressed on a motion for class certification. (*See* Dkt. 17 at 13-14); *see, e.g.*, *Moody*, 2023 WL 404018, at \*2 (while the plaintiffs must establish that their injuries are sufficiently similar to those of the purported class, courts should "reserve[ ] such an inquiry for the class certification stage" (collecting cases)).

For example, in *Block v. HZ Ops Holdings, Inc.*, No. 1:19-cv-06461, 2020 WL 9749412 (N.D. Ill. Oct. 27, 2020), the plaintiff, who had a mobility disability requiring the use of a wheelchair, alleged that he personally experienced difficulty while navigating the parking lot and path of access to one of the defendants' Popeyes restaurants, due primarily to the excessive sloping in the lot. *Id*. at \*1. Plaintiff alleged an intent to return to the restaurant, and he also brought a nationwide class action on behalf of all wheelchair users due to accessibility barriers stemming from the defendants' failure to comply with the ADA's slope regulations. *Id*. The plaintiff further alleged that the sloping violations, which investigators identified at six other Popeyes restaurants, "evince[d] a systemic failure to maintain proper accessibility features." *Id*. at \*2 & n.1. The defendants argued that the plaintiff lacked standing to bring claims for restaurants he did not actually visit. *Id*. at \*3. The court disagreed, explaining that the defendants' argument implicated class standing and "ultimately fail[ed] at this time":

> Plaintiff establishes his individual standing and injury-in-fact by pleading as
> to his personal experience at the specific Popeyes on 3204 S. Ashland
> Avenue. The investigation of various specific restaurants that Plaintiff did

not visit is offered to illustrate the alleged widespread nature of Defendants' supposed ADA violations. In other words, Plaintiff offers these other identified restaurants and their slopes as evidence that Plaintiff's injury—and those of the allegedly injured class—is caused by Defendants' uniform policies, practices, or procedures and "systemic disregard" for civil rights.

*Id.*

Similarly, in *Hernandez*, 323 F.R.D. 496, the plaintiff, who used a wheelchair, brought a putative class action against AutoZone, alleging that multiple stores were inaccessible to customers using wheelchairs and that their maintenance policies were inadequate to detect and remedy accessibility barriers in the stores' parking lots and walkways, including that parking spaces and entrances were not wide enough for his wheelchair, and the parking lot and sidewalks had excessive slopes. *Id*. at 498-99. In response to the plaintiff's class certification motion[2], the defendants argued that he lacked standing to bring his claims against locations he did not visit. *Id*. at 501. The court rejected that argument:

> Hernandez has class standing. First, as discussed above, he has faced access barriers as a result of AutoZone's alleged failure to detect and remedy them. Second, access barriers encountered by other class members at other AutoZone locations "implicate[ ] 'the same set of concerns'" as the ones Hernandez encountered: whether AutoZone's centralized policies are adequate to detect and remedy violations of the ADA. AutoZone's standing challenge is without merit.

*Id*. *See also Heinzl v. Bos. Mkt. Corp.*, No. CIV.A. 14-997, 2014 WL 5803144, at *8 (W.D. Pa. Nov. 7, 2014) ("With respect to other locations cited in the Amended Complaint, Plaintiff does not have to visit them to establish standing. Rather, that is an issue of class

---

[2]    In *Hernandez*, the Court ultimately concluded that Plaintiff met the requirements of Rule 23 and certified the class. 323 F.R.D. at 504.

certification.  Defendant's argument about the scope of available injunctive relief based upon different barriers at various stores goes to Plaintiff's ability to serve as a class representative, which is not ripe for disposition at this time."); *Cf. Clark*, 255 F. Supp. 2d at 343 n.11 (absent an allegation that Burger King restaurants are similar in that they possess commonality of architecture, or that they implement a corporate policy violating the ADA, the plaintiff lacked standing to pursue nationwide class action as to places he had not visited).

Defendants cite *Timoneri v. Speedway, LLC*, 186 F. Supp. 3d 756 (N.D. Ohio 2016), in which the plaintiff alleged that the defendant had a common policy of failing to adequately comply with the ADA regarding individuals who use wheelchairs.  *Id.* at 761. The court found that the plaintiff's allegations were too conclusory to confer standing for locations he did not visit, including because the variety of examples of noncompliance alleged by the plaintiff at the 18 properties visited by his investigators—which varied from excessive sloping in aisles and landings, a lack of van-accessible parking spaces, faded markings and cracks in the cement of accessible parking spaces, inadequate signage for accessible parking spaces, among other violations—undermined the plaintiff's allegation that the defendant adhered to a common policy or practice.  *Id.* at 758, 761.  The court further found that the plaintiff could not maintain his claims on behalf of the class, including because "determining liability as to each Speedway location would require the court to hold a series of 'mini-trials,' where it would have to conduct an individualized analysis of each location's compliance or non-compliance with the ADA based on the age of the facility and the type of violation claimed."  *Id.* at 763.  While the court acknowledged

that other courts decided such an issue on a motion for class certification, it granted the defendant's motion to dismiss the plaintiff's allegations as to locations he had not visited. *Id*. at 764; *see also King v. O'Reilly Auto., Inc.*, No. 2:15-CV-230-RMP, 2016 WL 868223, at *3 (E.D. Wash. Mar. 4, 2016) (granting motion to dismiss for lack of standing; while the alleged violations related to the slope of the ground surrounding parking spaces, the allegations varied sufficiently to undermine the allegation of a "common policy or architectural design").

Plaintiff alleges that Defendants have centralized maintenance and operational policies, practices, and procedures, which systematically and routinely result in excessive sloping conditions in the parking areas of Defendants' restaurants. (Dkt. 1 at ¶ 29). In support of this allegation, Plaintiff identifies 11 Wendy's restaurants examined by investigators wherein excessive sloping conditions exist, including: the purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10 percent; the purportedly accessible landing at the top of the curb ramp to the building had a slope exceeding 2.1 percent; and the parking surface of one or more purportedly accessible parking spaces and access aisles within the parking area had slopes exceeding 2.1 percent. (*Id*. at ¶ 30 (listing 11 Wendy's restaurants and describing ADA violations present in exterior areas of each restaurant, and alleging that those violations "are illustrative of the fact that the Defendants' existing policies, practices, or procedures are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps"); *see also id*. at ¶ 31 ("As evidenced by the widespread excessive sloping conditions present in the Parking

Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.")).

As to Defendants' centralized maintenance and operational policies allegedly causing the excessive sloping, Plaintiff alleges that under the FDD, Defendants must comply with the Manual, and the FDD specifically establishes procedures relating to daily outside maintenance, the refurbishing and remodeling of restaurants, and the construction of new restaurants. (*Id*. at ¶¶ 20-26). Plaintiff further alleges that Defendants employ a chain of oversight to supervise restaurants within designated market areas, including the designation of an "Approved Operator" to supervise the operation of Defendants' restaurants. (*Id*. at ¶¶ 27-28).

The alleged ADA violations identified by Plaintiff—both at the 3050 Winton Road restaurant she visited, and at the remaining restaurants identified in the complaint—are similar in that they involve slopes in and around the external parking areas. Plaintiff has alleged that these violations were caused by a common policy employed by Defendants pursuant to the FDD and the Manual, with which they are required to comply. While the specific accessibility issues at each restaurant vary on a limited basis[3], Plaintiff has plausibly alleged that wheelchair users across Defendants' properties face the same set of

---

[3]     For example, of the 11 restaurants identified by Plaintiff in her complaint, six restaurants have a curb ramp with a flare exceeding ten percent; five restaurants have a landing at the top of the curb ramp with a slope exceeding 2.1 percent; and two restaurants have accessible parking spaces and access aisles with slopes exceeding 2.1 percent. (Dkt. 1 at ¶ 30).

concerns as those encountered by Plaintiff at the 3050 Winton Road location.  Whether the barriers at each restaurant have sufficient similarity—or commonality—to withstand class scrutiny is an issue pertaining to class certification, and not standing.  *Moody*, 2023 WL 404018, at *2; *Block*, 2020 WL 9749412, at *3.  Similarly, with respect to the alleged common policy and practice employed by Defendants, Plaintiff has alleged enough information in the complaint to place Defendants on notice of her claims.

The Court recognizes that district courts have not always reached uniform conclusions on the class standing issue.  But the Court is persuaded by those decisions—including one from a court within this Circuit—that have found that allegations like those made by Plaintiff were sufficient to establish class standing.  Further, Defendants' argument that the violations found in their parking lots are not the same implicates many of the requirements relevant to the class certification determination (*i.e.*, commonality, typicality, and adequacy), which only underscores the conclusion that these issues should be addressed at the time a motion for class certification is filed, when the Court must evaluate whether Plaintiff has demonstrated numerosity, typicality, commonality, and adequacy.  Plaintiff will need to satisfy these requirements before the Court can certify the class, but Plaintiff's plausible allegations get her past the initial pleading hurdle so that she should be afforded the benefit of conducting discovery before the Court reaches those class certification issues.

In connection with their standing arguments, Defendants contend that courts have "rejected . . . attempts to turn isolated issues into nationwide claims based upon similar allegations of a common policy of failing to inspect and repair facilities."  (Dkt. 12-1 at 16

(citing, for example, *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2019 WL 5394050, at *4 (D. Colo. Oct. 22, 2019) ("[T]he ADA allows Defendant to make repairs when problems are brought to its attention, rather than requiring it to implement a proactive policy and seek out repairs in the manner that Plaintiff demands."); *Mielo v. Steak 'N Shake Operations, Inc.*, No. CV 15-180, 2019 WL 1330836, at *9 (W.D. Pa. Mar. 25, 2019) ("If a public accommodation allows conditions to deteriorate to the point that an individual with a disability is deterred or denied access, that individual can sue for an ADA violation, but this does not mean that the public accommodation is also independently liable for failing to notice the condition in the first place.")). Defendants argue that since they are not required to implement proactive policies or seek out repairs, Plaintiff cannot allege a violation of the ADA. Plaintiff responds that she is not alleging that Defendants are required to implement a proactive policy or seek out repairs; rather, she requests *modification of* existing policies that have caused inaccessibility of Defendants' parking areas and, under the ADA, it is unlawful for Defendants to fail to make reasonable modifications to accommodate individuals with disabilities. (Dkt. 17 at 20).

Plaintiff alleges that Defendants have a common policy relating to the maintenance of the areas outside of their restaurants, including the parking areas. With respect to this policy, Plaintiff requests that Defendants "remediate" existing barriers within the parking areas, and that Defendants "modify their existing policies" to ensure that the parking areas (specifically, as to excessive sloping) are ADA-compliant. (*See, e.g.*, Dkt. 1 at ¶¶ 5-6; *see also id*. at ¶ 23 (discussing Defendants' requirements for maintaining restaurant buildings' interior and exterior areas); *id*. at ¶ 48 (alleging that Defendants have failed to maintain

their facilities and modify existing procedures to ensure compliance with the ADA)).  In other words, Plaintiff is not alleging that Defendants are required to proactively search for alleged violations—but rather that Defendants are required to remedy sloping violations when they find them, and they are required to maintain policies that will adequately address any such violations.  The Court finds that Plaintiff has plausibly alleged violations of the ADA.  *See* 28 C.F.R. § 36.211(a) ("A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part."); *Block*, 2020 WL 9749412, at *3 (rejecting defense argument that the ADA does not provide for a proactive compliance remedy, and noting that "the text of the statute provides that entities can violate the ADA by not modifying their policies, practices, or procedures").  Accordingly, injunctive relief may be appropriate, and Defendants' motion to dismiss based on a lack of standing is denied.

## B.  The Rule 23 Class Allegations

Defendants next argue that a Rule 23 class for nationwide injunctive relief cannot be certified, essentially recasting their standing arguments as arguments in support of the dismissal or striking of the class allegations: (1) Plaintiff cannot establish commonality, including because Plaintiff has not alleged a common policy and the variety of examples of noncompliance does not support a common policy; (2) Plaintiff lacks standing to pursue nationwide class relief; and (3) Plaintiff's allegations are not sufficient to set forth a plausible claim for nationwide class relief.  (Dkt. 12-1 at 2, 17-21).  Defendants request that the Court strike or dismiss Plaintiff's nationwide class allegations.  (*Id*. at 19).  For

largely the same reasons discussed above with respect to Plaintiff's standing to bring claims on behalf of the class, the Court also denies this aspect of Defendants' motion.

Pursuant to Rule 23, "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(c)(1)(A). "While courts typically determine whether to certify a class by considering a plaintiff's motion for certification, a defendant need not wait for the plaintiff to act and may, in fact, move preemptively for an order denying class certification." *Small v. GNC*, 388 F. Supp. 2d 83, 99-100 (E.D.N.Y. 2005). That said, motions to strike class allegations are "disfavored," including because such motions "require[ ] a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore v. Proctor & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (quoting *Ironforge.com v. Paychex, Inc.,* 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010)). Specifically, "in this Circuit, a motion to strike class claims is considered premature if the issues raised are 'the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b).'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.,* No. 06 Civ. 6198(LAK)(JFC), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)). However, "a motion to strike that addresses issues separate and apart from the issues that will be decided on a class certification motion is not

procedurally premature." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quotations and citation omitted).

Defendants' arguments in support of dismissal of the class allegations—like their standing arguments—implicate issues that should be decided on a class certification motion. (*See, e.g.*, Dkt. 12-1 at 18-20 (arguing that Plaintiff cannot meet the commonality requirement, and she cannot serve as a class representative)). In this circuit, any such motion is premature. *See Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 53 (E.D.N.Y. 2017) ("[D]istrict courts in this Circuit have frequently found that a determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage, when the court has before it a more complete factual record from which to make its determination" (quotations and citation omitted)); *Hidalgo v. Johnson & Johnson Consumer Co.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) ("to succeed on a motion to strike class allegations, a defendant must demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery" (quotations and alterations omitted)).

Defendants have failed to demonstrate that it would be "impossible" for Plaintiff to make a showing to certify the class. Rather, Defendants' arguments focus on the purported lack of specific allegations in the complaint (*see, e.g.*, Dkt. 12-1 at 18 ("Plaintiff's allegations fail to identify any common policy or common architectural design that facilitates consistent violations of the ADA")), which further supports that Plaintiff should be permitted to conduct discovery on her claims, including those brought on behalf of the class. Defendants can raise arguments about the class certification issues once Plaintiff has

the benefit of discovery. But the Court will not take such a drastic action as striking allegations from the complaint, particularly here, where Plaintiff has cited to specific documents forming the basis for Defendants' alleged policies and her identification of other specific properties owned by Defendants, where similar ADA sloping violations allegedly exist. *See Block*, 2020 WL 9749412, at *4 ("At this time, the Court cannot conclude that the proposed class claims—which limit the class to wheelchair users who encountered accessibility barriers due to violations of the ADA's parking-area slope regulations—are plainly lacking ascertainability or commonality. Discovery is necessary to determine whether to certify the proposed class.").

Finally, in connection with their motion to dismiss and/or to strike the class allegations, Defendants argue that Plaintiff makes allegations "upon information and belief," and those allegations are not sufficient to state a claim on behalf of a class. (Dkt. 12-1 at 20). The Court disagrees. Plaintiff's allegations are based on her own experiences at the 3050 Winton Road restaurant owned by Defendants, as well as information she obtained by private investigators as to other restaurants owned by Defendants. (Dkt. 1 at ¶¶ 17-19, 30). While Plaintiff makes some allegations upon information and belief—mostly pertaining to specific information in Defendants' confidential Operations Standards Manual, which she alleges is not available publicly (*id*. at ¶ 21)—Plaintiff has not been afforded the benefit of discovery at this stage of the litigation. As discussed above, Plaintiff has plausibly alleged a violation of the ADA, and her allegations meet the plain notice pleading standards as established in *Iqbal* and *Twombly*. At the class certification stage,

Plaintiff will be required to put forth information sufficient to satisfy the requirements for class certification, but she is not required to do so at this point.

## **CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss and/or strike the class allegations is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: October 28, 2024
        Rochester, New York